Nikolaas "Kallie" KNOETZE,
Plaintiff–Appellant,

v.

The UNITED STATES of America, The
DEPARTMENT OF STATE et al.,
Defendants–Appellees.

No. 79–2293.

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 12, 1981.

Michael John Ryan, Port Arthur, Tex., for plaintiff–appellant.

Peter Nimkoff, Spec. Asst. U. S. Atty., Miami, Fla., for defendants–appellees.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

HATCHETT, Circuit Judge:

In this case we have determined that Congress has conferred upon the Secretary of State, through 8 U.S.C. § 1201(1), the power to revoke a visa issued to an alien who has entered the United States. We have reviewed the Secretary's revocation of the visa issued to appellant Nikolaas Knoetze under the standards of the Administrative Procedure Act, 5 U.S.C. § 706(2), and find that the Secretary lawfully acted within his discretion. We reject Knoetze's contention that the revocation of his visa without notice violated constitutionally mandated due process of law. We therefore affirm.

FACTS

The trial court has extensively described the facts and procedural history of this case. *Knoetze v. United States,* 472 F.Supp. 201 (S.D.Fla.1979). We summarize them as follows.

Knoetze, a world–class boxer and former policeman from South Africa, came to the United States on a non–immigrant visa to take part in a prize fight. Knoetze then discovered through the news media that his visa had been revoked. The Secretary of State revoked his visa after concluding that Knoetze was convicted in South Africa of a crime corresponding to an American felony involving moral turpitude. The Immigration and Nationality Act renders such foreign convicts ineligible for a visa of entry into our country. 8 U.S.C. § 1182(a)(9).[1]

Knoetze received a preliminary injunction against deportation and competed in the prize fight. He also applied for an H–class visa, which would have permitted him to work in this country. The Immigration and Nationalization Service (INS) denied this application because of the Secretary's act of revocation.

The trial court refused to grant a permanent injunction against the revocation of Knoetze's visa. The court agreed with Knoetze that the Secretary's act of revocation was subject to judicial review. The court also considered Knoetze's charge that civil rights leaders had exerted such intense political pressure upon the executive branch as to constitute impermissible levels of "political interference." Yet the court accepted the position of the Secretary that Knoetze's visa was lawfully revoked because of an admitted conviction in South

---

1. Title 8, section 1182(a)(9) of the United States Code provides, in pertinent part:

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

(9) Aliens who have been convicted of a crime involving moral turpitude (other than a purely political offense) .... Any alien who would be excludable because of the convic-

tion of a misdemeanor classifiable as a petty offense under the provisions of section 1(3) of Title 18, by reason of the punishment actually imposed, or who would be excludable as one who admits the commission of an offense that is classifiable as a misdemeanor under the provisions of section 1(2) of Title 18, by reason of the punishment which might have been imposed upon him, may be granted a visa and admitted to the United States if otherwise admissible ....

Africa for a crime which the Secretary reasonably viewed as equivalent to an American felony involving moral turpitude.

This South African crime is entitled "Attempting to Obstruct or Impede the Process of Justice." The indictment to which Knoetze pled guilty alleged that he made several false statements while serving as a policeman in order to persuade citizens of his country to drop assault charges against a fellow police officer. The trial court accepted the conclusion of the Secretary that Knoetze's criminal conduct corresponded to the United States felony of "Influencing or Injuring an Officer, Juror or Witness," 18 U.S.C. § 1503, a felony involving moral turpitude. The trial court therefore upheld the Secretary's act of revocation.

## ISSUES

Knoetze's appeal of this decision raises the following issues:

(1) May the judiciary review the Secretary's revocation of a visa held by an alien within our country?

(2) If so, what are the appropriate standards of review at the trial and appellate levels?

(3) Does the Secretary have the power to revoke visas issued to those already within our country?

(4) If so, what limits exist upon this power?

(5) Did the Secretary violate any such limitations when revoking Knoetze's visa?

## JUDICIAL REVIEW

■ We agree with the trial court that the judiciary may review a decision by the Secretary of State to revoke the visa of an alien within our country. On appeal, the government has dropped its argument of non–reviewability.

The proper standard of judicial review is expressed in the Administrative Procedure Act, 5 U.S.C. § 706(2). This is the limited standard of review applicable in the analogous context of deportation proceedings. *Wong Yang Sung v. McGrath*, 339 U.S. 33,

70 S.Ct. 445, 94 L.Ed. 616 (1950); *Jarecha v. Immigration and Nationalization Service*, 417 F.2d 220 (5th Cir. 1969). The relevant portions of this Act provide:

The reviewing court shall—

.      .      .      .      .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

.      .      .      .      .

■ Under this limited standard of review, we can enjoin the revocation of Knoetze's visa only if the Secretary has violated the law or committed a clear error of judgment. *Bowman Transportation, Inc. v. Arkansas–Best Freight Systems, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Refrigerated Transport Co. v. ICC*, 616 F.2d 748 (5th Cir. 1980). Our standard of review is the same as that of the trial court.

Congress has conferred upon the Secretary the power to revoke a visa in the following language: "After the issuance of a visa or other documentation to any alien, the consular officer, or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." 8 U.S.C. § 1201(i). No court has been called upon to decide whether this broad language confers authority upon the Secretary to revoke the visa of an alien after his entry into our country.

Knoetze argues that § 1201(i) merely confers revocation power prior to an alien's entry into the United States. He makes three supporting arguments. First, the overall statute to which this section belongs addresses the procedures for the issuance of visas to foreigners seeking initial entry. 8

U.S.C. §§ 1151–1230. The language of § 1201(i) itself, after authorizing visa revocation, goes on to treat the liabilities of a transportation company that brings aliens into the country after the revocation of their visas.[2]

Second, Congress entrusted major responsibility over aliens within the country to the Attorney General, rather than the Secretary of State, under a wholly different statutory scheme. 8 U.S.C. §§ 1251–60.

Third, Knoetze argues that the provision of due process safeguards in the Attorney General's deportation authorization, § 1252(b), coupled with the absence of any such safeguards in the Secretary's visa revocation authorization, § 1201(i), indicates a legislative intention of assigning responsibility for handling aliens within our country to the Attorney General, rather than the Secretary of State. Knoetze bolsters this argument by noting that aliens within the country are constitutionally entitled to procedural due process, while those outside the country receive no constitutional protection. *Shaughnessy v. United States*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). He contends that in recognition of this distinction, Congress provided procedural safeguards in the Attorney General's deportation authorization because Congress intended the Attorney General to have responsibility over aliens after their arrival. We disagree.

■ We accept the argument of the government that § 1201(i) means exactly what it says: the Secretary may revoke an alien's visa "at any time." We reject Knoetze's invitation to limit this clear and broad language. We must assume that Congress used the unambiguous words "at any time" as they are commonly understood, even if a different interpretation would yield a result we would prefer.

*United States v. Stewart*, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940); *United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979). Moreover, we accord considerable deference to the interpretation of § 1201(i) by the Department of State, the agency empowered by Congress to administer the issuance and revocation of visas. *E. I. duPont de Nemours & Co. v. Collins*, 432 U.S. 46, 97 S.Ct. 2229, 53 L.Ed.2d 100 (1977). We hold that Congress has conferred upon the Secretary the authority to revoke the visa of an alien "at any time," even after he has entered our country.

■ We must now consider the substantive and procedural limitations upon the power conferred by § 1201(i). These limitations are implicit in the standard of review expressed in the Administrative Procedure Act, 5 U.S.C. § 706(2): (a) the Secretary must comply with any statutory procedures for the revocation of a visa; (b) the Secretary's act of revocation must not exceed his statutory authority; (c) the Secretary may not abuse his discretion by acting capriciously in revoking a visa; and (d) the Secretary must respect the constitutional rights enjoyed by visa holders within our borders.

The Secretary's method of revoking Knoetze's visa violated no statutory procedural requirements because the authorizing statute contains no procedural requisites. 8 U.S.C. § 1201(i). The Secretary acted within the bounds of his statutory authority because § 1201(i), as interpreted above, permitted the Secretary to revoke Knoetze's visa even after Knoetze had fully entered our country.

■ We further find that the Secretary lawfully acted within his discretion in revoking Knoetze's visa. The trial court de-

---

**2.** Title 8, section 1201(i) of the United States Code provides:

After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation. Notice of such revocation shall be communicated to the Attorney General, and such revocation shall invalidate the visa or other documentation from the date of issuance: *Provided*, That carriers or transportation companies, and masters, commanding officers, agents, owners, charterers, or consignees, shall not be penalized under section 1323(b) of this title for action taken in reliance on such visas or other documentation, unless they received due notice of such revocation prior to the alien's embarkation.

termined that the Secretary revoked Knoetze's visa not because of impermissible "political interference," but because of Knoetze's conviction for a South African crime reasonably believed to correspond to an American felony involving moral turpitude. We agree.

Strong evidence of the politicalization of an otherwise routine, bureaucratic decision might raise a suspicion of discriminatory agency action. In this case, however, it is indisputed that Knoetze pled guilty to the South African crime of "Attempting to Obstruct or Impede the Process of Justice." Those who have been convicted abroad of a crime equivalent to a felony involving moral turpitude are ineligible under the Immigration and Nationality Act to hold a visa for entry into the United States. 8 U.S.C. § 1182(a)(9).

The American consul in South Africa issued Knoetze a visa because it believed that his offense fell within the misdemeanor petty offense exception of this Act. 8 U.S.C. § 1182(a)(9). The Secretary later concluded that Knoetze's conviction corresponded to a conviction for a felony involving moral turpitude. Because South African law differs greatly from American law, the Secretary compared the South African crime of "Attempting to Obstruct or Impede the Process of Justice" to the federal crime of "Influencing or Injuring an Officer, Juror or Witness," 18 U.S.C. § 1503.[3] The acts prohibited by § 1503 constitute a felony. See 18 U.S.C. § 1(1).[4] The misdemeanor petty offense exception is therefore inapplicable. The fraudulent acts prohibited by § 1503 also indicate moral turpitude: "fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of

moral turpitude." Jordan v. DeGeorge, 341 U.S. 223, 229, 71 S.Ct. 703, 706, 95 L.Ed. 886 (1951). The Secretary thus concluded that Knoetze was ineligible for a visa under 8 U.S.C. § 1182(a)(9).

The method followed by the Secretary of comparing foreign and American law to determine the degree of culpability of foreign criminal acts has already received judicial approval. Soetarto v. Immigration and Naturalization Service, 516 F.2d 778 (7th Cir. 1975); Giammario v. Hurney, 311 F.2d 285 (3d Cir. 1962). The conclusion reached by the Secretary in this case does not appear to be arbitrary or capricious or otherwise abusive of the discretion conferred upon him by § 1201(i). Even if experts differ as to whether Knoetze's foreign conviction corresponds to a felony involving moral turpitude, and even if hindsight shows that the Secretary has erred, his methods and conclusions appear entirely reasonable.

■ We must now determine whether the revocation of Knoetze's visa without notice complied with the due process rights guaranteed by the Constitution. The fifth amendment to the Constitution provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." Fifth amendment protection extends to all persons, including aliens, within the borders of the United States. Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953). Yet fifth amendment protection attaches only when the federal government seeks to deny a liberty or property interest. Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Downing v. Williams, 624 F.2d 612 (5th Cir. 1980).

---

**3.** Title 18, section 1503 of the United States Code provides, in pertinent part:

  Whoever corruptly ... endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate ... or corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due ad-

ministration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

**4.** Title 18, section 1(1) of the United States Code provides, in pertinent part: "Notwithstanding any Act of Congress to the contrary: (1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony."

Knoetze argues that he has such a protected interest in the retention of his entry visa. He points out that he was denied a working visa by INS because of the revocation of his entry visa by the State Department. He contends that by denying him the opportunity to work in our country, the government effectively denied him the ability to remain here. Knoetze therefore urges us to recognize the constitutionally protected liberty and property interest in the retention of his visa. We decline.

We accept the position of the government that the revocation of an entry visa issued to an alien already within our country has no effect upon the alien's liberty or property interests. Revocation of an entry visa by the Secretary does not automatically lead to deportation of the alien. Congress has entrusted deportation to a different department of government, the Attorney General, and established different criteria for deportation than those for visa issuance and revocation. 8 U.S.C. § 1251 (Deportable Aliens–General Classes). Moreover, Congress has provided extensive procedural safeguards to those subject to deportation, including the right to reasonable notice, a fair hearing, opportunity for cross–examination and legal representation. 8 U.S.C. § 1252(b). Since deportation does not automatically follow visa revocation and any resulting deportation proceeding includes significant procedural safeguards, we hold that the revocation of an alien's visa jeopardizes no liberty or property interest entitled to constitutional protection.

## CONCLUSION

We hold that the Secretary of State has the power under 8 U.S.C. § 1201(i) to revoke the visa of an alien even after an alien has entered the United States. We affirm the decision of the trial court that the revocation of a visa issued to an alien within the United States is subject to judicial review. We review such revocations under the Administrative Procedure Act, 5 U.S.C. § 706. We find no abuse of discretion in this case and no constitutional requirement of notice prior to revocation.

AFFIRMED.