**ALIENS FOR BETTER IMMIGRATION LAWS, et al., Plaintiffs,**

v.

**The UNITED STATES, et al., Defendants.**

**No. 94 Civ. 1472 (LLS).**

United States District Court,
S.D. New York.

Dec. 15, 1994.

---

Eileen N. Nadelson, New York City, for plaintiffs.

U.S. Atty., S.D.N.Y., New York City, for defendants; James Loprest, Jr., of counsel.

## MEMORANDUM AND ORDER

STANTON, District Judge.

Plaintiffs, housekeepers and child-care workers seeking permanent resident visas [1] (also known as "green cards"), claim that a provision of Pub.L. No. 101–649, 104 Stat. 4987–94 (1990) (the "1990 Amendments"), which amended the Immigration and Nationality Act of 1952 (the "Act"), violates their rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

Each of the plaintiffs has obtained a labor certification from the Department of Labor, (Complaint, ¶¶ 8–12), as a prerequisite to being classified for and receiving an employment-based visa to perform "skilled or unskilled labor" in the United States. 8 U.S.C. § 1182(a)(5)(A). An alien who obtains a certification and whose classification petition is approved must wait to obtain a visa until the Department of State determines that an immigrant visa in her preference category ("preference") is immediately available. See 8 C.F.R. § 245.1(a) (1994). Until she receives a visa, an alien can not lawfully be employed in the United States. See 8 U.S.C. § 1324a(a)(1), (h)(3).

When plaintiffs obtained their labor certifications, the allocation of employment-based visas between the two preferences then in effect led plaintiffs to expect they would receive their green cards in two to three years. (Complaint, ¶ 17.) However, while they were waiting, section 121 of the 1990 Amendments

---

1. Aliens for Better Immigration Laws, a not-for-profit corporation established to assist immigrants "through the process of documentation and labor certification," is also a plaintiff. (Complaint, ¶ 7.)

revised the preferences and reallocated the available visas.

The 1990 Amendments increased the total number of employment-based visas from 54,-000 to 140,000. *See* 8 U.S.C. § 1151(d)(1)(A); H.R.Rep. No. 723(I), 101st Cong., 2nd Sess. 36 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6715 [hereinafter, "House Report"]. Congress also created three employment preferences. The first, "Priority workers," consists of aliens "with extraordinary ability in the sciences, arts, education, business, or athletics, which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1). Members of the professions holding advanced degrees or otherwise demonstrating exceptional ability comprise the second preference. *Id.* § 1153(b)(2). Skilled workers, professionals and "other workers" make up the third preference. 8 U.S.C. § 1153(b)(3). Plaintiffs fall within the "other worker" subpreference of the third preference. (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, at 5, 13.)

Despite the overall increase in employment-based visas, section 121 limited the number of visas available to "other workers" to 10,000 per year. 8 U.S.C. § 1153(b)(3)(B). According to plaintiffs, that "revised allocation and specific limitation of visas to unskilled categories dashed [plaintiffs'] reasonable expectation of permanent status" and lengthened the waiting period up to twenty years. (Complaint, ¶ 17.) Plaintiffs allege that the extended waiting period also adversely affects United States citizens who would otherwise use the plaintiffs' services. (*Id.* ¶¶ 20–21.)

Plaintiffs claim that section 121's reallocation of visas is unconstitutional because it "has no rational basis consistent with national policy." (*Id.* ¶ 6.) Plaintiffs also contend that they or their sponsors, or both, acquired a legally protected interest in plaintiffs' ability to work legally in the United States following receipt of a labor certification; the reallocation, plaintiffs urge, deprived them of that right without due process of law.

Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint.

## DISCUSSION

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6),

a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"

*Sheppard v. Beerman,* 18 F.3d 147, 150 (2nd Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) (citations omitted).

### A. *Substantive Due Process*

■ The Due Process Clause of the Fifth Amendment states that "no person . . . shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It protects aliens within the jurisdiction of the United States. *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976).

■ Because "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government," *id.,* 426 U.S. at 81, 96 S.Ct. at 1892, court review is deferential. A statute regulating immigration which does not burden a fundamental right deprives an alien of substantive due process only if the statute does not "rationally advanc[e] some legitimate governmental purpose." *Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). The right asserted by plaintiffs—to work legally in the United States after labor certification but before issuance of a permanent residency card—is not "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *United States v. Salerno,* 481 U.S. 739, 751, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987) (citation omitted). Thus, section 121 does not violate plaintiffs' substantive due process rights if it is rational.

Section 121 is rationally related to the legitimate governmental objective of making it easier for managers, professionals and other skilled workers to immigrate to the United States. The legislative history reflects the concern, shared by Congress and the business community, that U.S. immigration law prevented American businesses from hiring "highly skilled, specially trained personnel to fill increasingly sophisticated jobs for which domestic personnel cannot be found and other workers to meet specific labor shortages." House Report at 41, 1990 U.S.C.C.A.N. at 6721.

 Plaintiffs argue that Congress acted irrationally in reducing the number of visas available for housekeepers and child-care workers because there is a labor shortage in those occupations. (*See* Plaintiffs' Memo. at 14.) That argument underestimates Congress's prerogative in formulating and implementing immigration policy. As stated in *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977),

At the outset, it is important to underscore the limited scope of judicial inquiry into immigration legislation. This Court has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens. Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' Our recent decisions have not departed from this long-established rule. Just last Term, for example, the Court had occasion to note that 'the power over aliens is of a political character and therefore subject only to narrow judicial review.' And we observed recently that in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'

(footnotes and citations omitted).

In that case challenging immigration classifications, the Court concluded, "In any event, it is not the judicial role in cases of this sort to probe and test the justifications for the legislative decision." *Id.*, 430 U.S. at 799, 97 S.Ct. at 1481–82.

Even assuming a shortage of housekeepers and child-care workers, section 121 "is not irrational simply because it is an imperfect solution to the problems Congress sought to eradicate." *Azizi v. Thornburgh*, 908 F.2d 1130, 1135 (2nd Cir.1990). Because the 1990 Amendments did not authorize an unlimited number of employment-based visas, Congress necessarily had to allocate the available visas among the preferences it created. In keeping with its goal of reducing the waiting period for skilled workers, Congress reserved a larger number of visas for skilled workers and allocated the remainder to unskilled workers. Congress could have determined that shortages of skilled workers were more pressing or that shortages of unskilled workers, if any, would be ameliorated by the expansion of the "immediate relative" visa program accomplished by the 1990 Amendments. *See* House Report at 38–39, 1990 U.S.C.C.A.N. at 6718–19. Thus, the reallocation was rationally related to Congress's objectives in enacting the 1990 Amendments and does not violate plaintiffs' substantive due process rights.

### B. *Procedural Due Process*

 Plaintiffs also appear to contend that section 121 violates their right to procedural due process. A plaintiff alleging a procedural due process violation must show: (1) that she had a protected interest, and (2) that she was deprived of that interest by state action without due process of law. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The protected interest must be "already acquired." *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). The complaint does not state a claim for deprivation of plaintiffs' procedural due process rights because plaintiffs can demonstrate no previously acquired legally protected interest.

### 1. Property Interest

For due process purposes, a property interest must be found in federal or state law. *Board of Education v. Loudermill*, 470 U.S.

532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Plaintiffs ground their claim on an assumed property right under the pre–1990 Act and regulations. They contend that by completing the labor certification process, they or their sponsors, or both, acquired a "right to work in accordance with the rules of certification." (Plaintiffs' Memo. at 11.) According to plaintiffs, the extended delay imposed by the 1990 reduction in available visas, coupled with the prohibition on employment pending receipt of a visa, infringes on that right to work.

Plaintiffs ignore the fact that the labor certification is but one part of the classification petition process, which in turn is the first step in obtaining an employment-based visa. The statute and regulations governing labor certification never granted plaintiffs a right to work without a visa which permits employment. *See* 20 C.F.R. pt. 656 (1994); 8 U.S.C. § 1324a(a)(1), (h)(3).

Likewise, nothing in the Act or regulations grants a putative employer who sponsors an alien's labor certification the right to employ the alien on completion of the certification process but before the alien obtains a visa. In *K.C.P. Food Co. v. Sava*, the court dismissed an employer's claim that it was denied due process by the denial of its classification petition on behalf of an alien, stating that "plaintiff cannot demonstrate that it has a property interest 'already acquired' that is entitled to protection." 623 F.Supp. 1080, 1085 (S.D.N.Y.1985); *see also Elatos Restaurant Corp. v. Sava*, 632 F.Supp. 1049, 1056 (S.D.N.Y.1986) (same). In sum, neither plaintiffs nor their prospective employer sponsors has a protected property interest in plaintiffs' right to work in the U.S. following labor certification.

### 2. Liberty Interest

An alien has "no constitutional right to work without authorization." *WJA Realty Limited Partnership v. Nelson*, 708 F.Supp. 1268, 1273 (S.D.Fla.1989); *see also Pilapil v. INS*, 424 F.2d 6, 10 (10th Cir.), *cert. denied*, 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970). Accordingly, plaintiffs have no liberty interest in being permitted to work legally in the U.S. between the time they obtain labor certification and the time they receive their visas.

### CONCLUSION

Defendants' motion to dismiss is granted. The Clerk is directed to enter judgment dismissing the complaint with costs and disbursements to defendants according to law.

So ordered.