**Mostafizur RAHMAN, Tazin Mahnaj, Monowara Begum, Kazi Arif Khalil, Mohammed Ahamed and Md Alam, Plaintiffs,**

v.

**Edward McELROY, Acting District Director for the United States Immigration and Naturalization Service, U.S. Department of Justice, and United States Attorney General Janet Reno, Defendants.**

No. 95 Civ. 1209 (HB).

United States District Court, S.D. New York.

April 4, 1995.

Bruno J. Bembi, New York City (Hasan T. Choudhury, of counsel), for plaintiffs.

Mary Jo White, U.S. Atty., S.D.N.Y. Sp. Asst. U.S. Atty., New York City (F. James Loprest, Jr., of counsel), for defendants.

## OPINION AND ORDER

BAER, District Judge.

Mostafizur Rahman, Tazin Mahnaj, Monowara Begum, Kazi Arif Khalil, Mohammed Ahamed and Md Alam (collectively "plaintiffs") brought this action against Edward McElroy, Acting District Director of the New York District of the Immigration and Naturalization Service ("INS"), the INS, and United States Attorney General Janet Reno (collectively, "defendants" or "Government") seeking injunctive relief. Plaintiffs are six natives of Bangladesh living in the United States who received notification from the United States Department of State ("State Department") that it had selected them for possible immigrant visas in its fiscal 1995 diversity visa "lottery." On February 21, 1994 plaintiffs moved for preliminary injunctive relief claiming that the INS acted arbitrarily in its scheduling of interviews in connection with their applications to become lawful permanent United States residents.

The defendants moved to dismiss the complaint, pursuant to Rule 12(b)(1), (6) and (7) of the Federal Rules of Civil Procedure, or, in the alternative, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The defendants argue, *inter alia*, that plaintiffs (1) point to no constitutionally protected property interest that the Government has infringed upon; (2) are not entitled to the extraordinary relief of mandamus; and (3) are not entitled to relief under the Administrative Procedure Act. On March 16, 1995, this court heard oral argument.

## I. BACKGROUND

### A. *Plaintiffs' Allegations*

Plaintiffs entered the 1994–95 "visa lottery" and received letters from the State Department telling them that they had been assigned case numbers for "possible visa issuance" under the diversity visa allocation system. Complaint ¶ 2, Exhibits A–E. The letters informed them that "only 55,000 visas [were] available under the Diversity Visa program" and that "110,000 principal applicants [had been] notified," and that they should follow the instructions of the National Visa Center "as quickly as possible to assure [their] chances of possible visa issuance." *Id.* & Exhibit A.

Each plaintiff applied immediately to the INS to adjust his status to that of lawful permanent resident. *Id.* ¶¶ 1, 3, 18. The INS then scheduled plaintiffs to be interviewed on their adjustment applications. *Id.* ¶ 2. According to the plaintiffs, visas available to Asian applicants would be exhausted before the dates on which the INS scheduled plaintiffs' interviews. *Id.* ¶ 2, 20, 21, Exhibits J, K. Moreover, plaintiffs point to other visa lottery winners who applied for adjustment after the plaintiffs, whom the State Department gave lower-ranking case numbers, and

whom the INS nonetheless scheduled for adjustment interviews before plaintiffs. *Id.* ¶ 2, 18, 20 & Exhibits F, G, H, I.

Alleging that the INS had acted arbitrarily in scheduling their adjustment interviews, Complaint ¶ 2, and that "interviews were not scheduled ... on any ... rational basis," *id.* ¶ 21, plaintiffs applied to this Court for an order that the defendants show cause why plaintiffs should not be interviewed before March 1, 1995. On first blush the plaintiffs's argument seemed to be the "first come first served" concept that is so much a part of the American way of life. Consequently, after a conference on February 24, 1995, the Court issued the February 24, 1995 Order that plaintiffs' "visa rank numbers remain effective and valid for the purpose of adjustment of status ... assuming that the individual plaintiff's visa rank number was effective" as of the Order's date. I now conclude, after reviewing the facts and the complicated statutory scheme governing immigration, that injunctive relief must be denied and the complaint dismissed.

### B. *The Legal Background*

1. *The Law Governing Visa Issuance and the Diversity Immigrant Visa Program*

Under section 221 of the Immigration and Nationality Act of 1952, as amended (the "INA"), 8 U.S.C. § 1101(a)(9) & (16), the Department of State, acting through the United States Consuls, has the power to issue visas. *See* 8 U.S.C. §§ 1104(a)(1), 1201(a). "It is important to note that a *visa petition* is not the same thing as a *visa,*" *Tongatapu Woodcraft Hawaii Ltd. v. Feldman,* 736 F.2d 1305, 1308 (9th Cir.1984) (emphasis in original), and that an alien's filing of a visa petition, analogous to the applications filed by plaintiffs here, does not guarantee that a visa will be issued, nor does it grant the alien beneficiary any right to enter or remain in the United States. *See id.* at 1308; *Joseph v. Landon,* 679 F.2d 113, 115 (7th Cir.1982).

Section 203 of the INA, 8 U.S.C. § 1153(c)(1)(A), constitutes the relevant statute governing the diversity visa program. That statute requires the Attorney General to determine "for the most recent previous 5–fiscal–year period for which data are available," the total number of aliens by country of origin who were admitted to the United States or granted lawful permanent residency under the worldwide quota system in 8 U.S.C. § 1151(a) or as immediate relatives under 8 U.S.C. § 1151(b)(2). On the basis of these numbers, the Attorney General must divide the 55,000 lottery visa openings among "low-admission regions." *See* 8 U.S.C. § 1153(c)(1)(E) (Supp. IV 1992). This provision was designed to enhance immigration from underrepresented countries. *Id.* The percentage of visas made available under the diversity visa program to natives of any single foreign state was not to exceed seven percent, or 3,850. 8 U.S.C. § 1153(c)(1)(E)(v).

An alien from a "low-admission region" who otherwise meets the programs qualifications may apply once yearly to the Department of State to register for a visa based on diversity. *See* 59 Fed.Reg. at 15303–4 (describing procedures for applying in 1994–95 fiscal year). Based upon the Attorney General's regional allocations for a given year, "[i]mmigrant visa numbers made available [under the diversity program] shall be issued to eligible qualified immigrants strictly in a random order established by the Secretary of State." 8 U.S.C. § 1153(e)(2). The randomness aspect of the State Department's assignment of visa eligibility has caused the program to be described as a "visa lottery." *See* 59 Fed.Reg. at 15303.

2. *The Law Governing Adjustment of Immigration Status*

Under 8 U.S.C. § 1255, otherwise illegal aliens may apply to adjust their status to become lawful permanent residents.

> The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in h[er] discretion ... to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa

is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Because of the special benefit it confers upon an alien who would otherwise be required to depart the United States to apply for an immigrant visa, and then return, section 245 adjustment is considered to be "extraordinary relief." *Randall v. Meese*, 854 F.2d 472, 474 (D.C.Cir.1988) (quoting *Jain v. INS*, 612 F.2d 683, 687 (2d Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980)).

▪ The regulations do not permit an alien denied adjustment to seek direct review in a district court, 8 C.F.R. § 245.2(a)(5)(ii), but rather, specifically allow the alien to "apply to [an] immigration judge for ... adjustment of status" during deportation proceedings. 8 C.F.R. § 242.17(a). If that proves unsuccessful, an alien may take an administrative appeal to the Board of Immigration Appeals, *see* 8 C.F.R. § 242.21, and, ultimately, seek judicial review in a circuit court of appeals pursuant to 8 U.S.C. § 1105a(a). Failure to seek such administrative review before challenging an adjustment denial in a district court constitutes a failure to exhaust administrative remedies. *See, e.g. Augoustinakis v. United States INS at New York, N.Y.*, 693 F.Supp. 1554, 1555 (S.D.N.Y.1988). Plaintiffs have not begun to avail themselves of their administrative remedies, let alone exhaust them.

### 3. *The Executive Branch's Plenary Power Over Admission to the United States*

▪ Upon close analysis it appears clear that judicial review in immigration matters is narrowly circumscribed. *Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993); *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977). Control over immigration "is a sovereign prerogative," *Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982), and immigration is an area that the Constitution largely entrusts to the political branches of government. *See, e.g., United States v. Valenzuela–Bernal*, 458 U.S. 858, 864, 102 S.Ct. 3440, 3444, 73 L.Ed.2d 1193 (1982); *Harisiades v. Shaugh-*

*nessy,* 342 U.S. 580, 596–97, 72 S.Ct. 512, 522–23, 96 L.Ed. 586 (1952) ("the particular classes of aliens that shall be denied entry [and] the basis for determining such classification ... have been recognized as matters solely for the responsibility of the Congress and wholly outside the power of this Court to control"); *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909) ("over no conceivable subject is the legislative power of Congress more complete" than the processing of aliens).

Moreover, "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Fiallo*, 430 U.S. at 792, 97 S.Ct. at 1478 (citation omitted). "Congress can bar aliens from entering into, or remaining within, the United States for discriminatory and arbitrary reasons, even those that might be condemned as a denial of equal protection or due process if used for purposes other than immigration policy to draw distinctions among people physically present within the borders of the United States." *Matter of Longstaff,* 716 F.2d 1439, 1442 (5th Cir.1983) (footnote omitted). For these reasons, courts have historically refrained from intervening in the Government's process of issuing visas. *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir.1978) ("It is settled that the judiciary will not interfere with the visa-issuing process.") (citing cases). Indeed, a consular officer's decision to deny a visa to a particular alien a visa is beyond judicial review. *Shen v. U.S. Consulate General at Shanghai, China,* 866 F.Supp. 779, 780 (S.D.N.Y.1994) (citing cases).

## II. DISCUSSION

### A. *Standard for Rule 12(b) Motions*

▪ When considering the sufficiency of a complaint under a Rule 12(b) motion to dismiss for failure to state a claim, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011,

1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

> The issue [on a motion to dismiss] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991).

### B. *Constitutionally Protected Interests*

■ To the extent plaintiffs allege that they have been "treated unfairly" in violation of the Fifth Amendment Due Process Clause by the scheduling of their adjustment interviews, *see* Complaint ¶ 2, this Court must examine what constitutionally protected property interest, if any, plaintiffs have in an immigrant visa or an interview date. It is axiomatic that an alien's due process "protection attaches only when the federal government seeks to deny a liberty or property interest." *Knoetze v. United States,* 634 F.2d 207, 211 (5th Cir.1981) (citing *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). A protected interest must be "already acquired" for an alien to complain of its deprivation. *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Aliens for Better Immigration Laws v. United States,* 871 F.Supp. 182, 185–86 (S.D.N.Y. 1994).

Simply put, plaintiffs do not have a constitutionally-protected interest in an immigrant visa—let alone in a particular adjustment interview date. *Azizi v. Thornburgh,* 908 F.2d 1130, 1134 (2d Cir.1990) (an alien "ha[s no] inherent property interest in an immigrant visa"). Therefore, plaintiffs' reference to their "rights" to lawful resident status, *see* Complaint ¶¶ 4, 25, 27, is incorrect. Indeed, even "revocation of an entry visa issued to an alien already within [the] country has no effect upon the alien's liberty or property interests." *Knoetze,* 634 F.2d at 212; *cf. MacDonnell v. INS,* 693 F.Supp. 1439, 1442 (S.D.N.Y.1988) (dismissing due process challenge to act of Congress where petitioners could not show that legislation potentially barring their adjustment to lawful permanent resident status deprived them of a property interest); *Aliens for Better Immigration Laws,* 871 F.Supp. at 185 (granting Government's motion to dismiss where "complaint d[id] not state a claim for deprivation of plaintiffs' procedural due process rights because plaintiffs c[ould] demonstrate no previously acquired legally protected interest" in right to work pending immigrant visa application). Accordingly, to the extent it outlines a Due Process claim, the complaint will be dismissed for failure to state a claim upon which relief can be granted.

### C. *Plaintiffs' Claims to Relief Under the APA or to the Extraordinary Relief of Mandamus*

■ Before plaintiffs are entitled to relief under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 704, *see* Complaint ¶ 9, or the extraordinary relief of mandamus, *id.* ¶ 1, they must point to a plainly defined and peremptory duty of the INS to reschedule their adjustment interviews in the order they were received. Plaintiffs cite the letters they received from the State Department advising them to follow the instructions of its National Visa Center "as quickly as possible to assure your *chances* of *possible* visa issuance." Complaint Exhibits A–I (emphasis added). However, this language demonstrates that although the State Department advised the plaintiffs to act expeditiously, it noted that they only had "*chances* of *possible* visa issuance" and not a right to visas, let alone particular adjustment interview dates, if they acted quickly. These letter do not impose a duty on the INS regarding adjustment interview scheduling.

The statute governing the allocation of immigrant visas subjects only family- and. employment-based immigrant visa petitions to a "first come first served" requirement. *See* 8 U.S.C. § 1153(e)(1). The subsection governing diversity visas, 8 U.S.C. § 1153(c), *does not* subject the Government to such a re-

quirement. The only restriction placed on the Government with regard to the issuance of such visas is that the Secretary of State shall do so "strictly in a random order." 8 U.S.C. § 1153(e)(2). That Congress did not add a provision requiring the Attorney General to process adjustment applications filed by potential diversity visa "winners" on a first-come, first-served basis is a strong, if not conclusive indication that no such restriction was applicable. *See National R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) ("*expressio unius est exclusio alterius*"); *Water Transp. Ass'n v. ICC,* 722 F.2d 1025, 1029 (2d Cir.1983) (same); *De Los Santos v. INS,* 690 F.2d 56, 60 (2d Cir.1982) (where "INS's strict interpretation is consistent with the language and history of the [INA] and is, as a general matter, reasonably calculated to serve the purposes of the [INA], it is entitled to deference, and we will not invalidate it").

◼ Moreover, mandamus simply is not appropriate here. In the administrative context, "the common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984) (citations omitted); *Kerr v. United States District Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725. Indeed, it is " 'absolutely clear' that 'administrative agencies should be free to fashion their own rules of procedure ... [so as to be able] to discharge their multitudinous duties,' " *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978) (citations omitted), and that federal agencies are entitled to the presumption that they will act properly and according to law. *FCC v. Schreiber,* 381 U.S. 279, 296, 85 S.Ct. 1459, 1470, 14 L.Ed.2d 383 (1965). Reviewing courts have therefore been cautioned "against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp.,* 435 U.S. at 525, 98 S.Ct. at 1202.

In short, because the action that the plaintiffs seek to compel is not "subject to positive command, plainly described and free from doubt," it is not susceptible to the extraordinary relief of mandamus. *Fifth Avenue Peace Parade Committee v. Hoover,* 327 F.Supp. 238, 242 (S.D.N.Y.1971). Defendants have a clear duty to interview the plaintiffs, but they do not have to schedule those interviews on any particular day or in any special sequence. This is true even though the plaintiffs applied early for adjustment and even though there may be no visas left when their interviews occur. While this may seem harsh, it clearly follows the immigration laws of the United States. *See De Los Santos,* 690 F.2d at 60 ("It is not the province of the courts to insist that INS's interpretations of the [INA] result in the perfect immigration scheme, or even that they be the best interpretations possible. Rather INS is given a fair amount of latitude to exercise its judgment as to what interpretations will best effectuate the goals of the [INA]."). Therefore, the extraordinary relief of mandamus is not available to these plaintiffs.

Plaintiffs' APA claim fares no better. As the Second Circuit has stated,

> matters solely within the INS's discretion ... are not reviewable under the Administrative Procedure Act or 28 U.S.C. § 1361.... [and, a]side from our powerlessness to intervene, the judicial creation of such a duty would have the potential for mischievous interference with the functioning of already overburdened administrative agencies.

*Wan Shih Hsieh,* 569 F.2d at 1182 (citations omitted) (refusing to compel INS to investigate petitioner's immigration status), *cert. denied,* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 121 (1978); *see also City of N.Y. v. Shalala,* 34 F.3d 1161, 1167 (2d Cir.1994) (scope of review of APA claims is "a narrow one").

When plaintiffs received the letters notifying them of "winning" the diversity lottery, they were told that, assuming they met all eligibility criteria, they had at best a one-in-two chance of actually obtaining a visa that

788

would permit them to adjust their status. The INS simply has no duty to schedule adjustment interviews in the order the applications were received to help the plaintiffs maximize their chances of obtaining a diversity visa to the detriment of the other "lottery winners." Accordingly, plaintiffs' claims to relief under the APA and to the extraordinary relief of mandamus will be dismissed for failure to state a claim upon which relief can be granted.

## Conclusion

For the reasons stated, the complaint shall be dismissed with prejudice for failure to state a claim upon which relief can be granted. The February 24, 1995 Order in this case shall be vacated.

**SO ORDERED**