**Rozeta Goxhabelli HULI, Petitioner,**

v.

**Terry E. WAY, District Director of the Nebraska Service Center, Bureau of Citizenship and Immigration Affairs, formerly the Immigration and Naturalization Service, Respondent.**

No. 03 CIV. 2228(VM).

United States District Court,
S.D. New York.

Oct. 13, 2005.

Linda L. Foster, Queens Village, NY, for Petitioner.

James F. Loprest, Jr., Special Assistant U.S. Attorney, New York City, for Respondent.

### *DECISION AND ORDER*

MARRERO, District Judge.

Petitioner Rozeta Goxhabelli Huli ("Huli"), an asylee residing in the United States, brings this action by Petition for a Writ of Mandamus (the "Petition") to set aside Respondent's denial of Huli's Refugee Asylee Relative Petition seeking derivative asylee status for her husband, Hartin Huli, and ordering Respondent to grant Huli's Refugee Asylee Relative Petition. Respondent Terry E. Way ("Respondent"), District Director of the Nebraska Service Center, Bureau of Citizenship and Immigration Services ("BCIS") (formerly known as the Immigration and Naturalization Service ("INS")), cross-moves to dismiss the Petition for lack of subject matter jurisdiction, or in the alternative, for a grant of summary judgment. Huli did not file any submissions in response to Respondent's motion to dismiss the Petition.

On September 30, 2005, this Court issued an Order granting Respondent's motion to dismiss for lack of subject matter jurisdiction and stated that its findings, reasoning and conclusions would be set

forth in a subsequent decision. Accordingly, for the reasons discussed below, Respondent's motion is granted and Huli's Petition is dismissed.

## I. BACKGROUND

■ The following facts are taken from the Petition, except where noted. All factual allegations in the Petition are assumed to be true for purposes of this motion.[1]

Huli was granted asylum in the United States in May 1997. In October 1999, Huli filed a Refugee Asylee Relative Petition ("I–730 Petition") with the INS in which she requested derivative asylee status for her husband Hartin Huli ("Hartin") pursuant to the Immigration and Naturalization Act ("INA") § 208(b)(3)(A) (codified at 8 U.S.C. § 1158(b)(3)(A)). That provision states that "a spouse or child ... of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158(b)(3)(A).

An applicant for derivative asylum status must demonstrate that the marriage relationship existed "at the time the principal alien's asylum application was approved." 8 C.F.R. § 208.21. The burden of proving the marriage relationship is on the derivative asylum applicant. *See* 8 C.F.R. § 208.21(f). Evidence demonstrating eligibility for derivative asylum status must be submitted "as set forth in 8 C.F.R. § 204" and should include, "where possible," a "certificate of marriage issued by civil authorities." *Id.;* 8 C.F.R. § 204.2.

In October 1999, Huli submitted her I–730 Petition to BCIS accompanied by a copy of a marriage certificate issued by a religious entity, the Albanian Islamic Cultural Center, dated March 3, 1997. (*See* Certificate of Marriage Registration, dated March 3, 1997, attached as Exhibit 1 to Huli's Petition for a Writ of Mandamus, dated April 1, 2003 ("Petition").) Huli did not submit a marriage certificate issued by civil authorities with her initial application materials.

Huli attempted to obtain a civil marriage certificate prior to obtaining asylum status but was turned away from the New York City Clerk's Office because she lacked the required identification documentation. (*See* Brief of Petitioner, dated January 3, 2005 ("Pet.'s Brief"), at 1.) In July 1998, after Huli was able to obtain identification documents from the federal government as a result of obtaining asylum status, Huli and Hartin were "re-married" at the City Clerk's Office and issued a civil marriage certificate dated July 30, 1998. (*Id.* at 1–2.)

On March 30, 2000, BCIS sent a "Request for Evidence" in response to Huli's I–730 Petition. The Request for Evidence stated that "the documentation submitted is not sufficient to warrant a favorable consideration of your petition/application.... The church issued marriage certificate is insufficient, please submit a copy of the marriage certificate of Rozeta Goxhabelli and Hartin Huli which has been registered with the proper civil authorities." (*See* Request for Evidence, dated March 30, 2000, attached as Exhibit 6 to the Petition.) In response to the Request for Evidence, Huli submitted a copy of a marriage certificate issued by the City of

---

1. "When the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *See Kim v. Ashcroft,* 340 F.Supp.2d 384, 387 (S.D.N.Y.2004).

New York dated July 30, 1998. (*See* Certificate of Marriage Registration, dated July 30, 1998, attached as Exhibit 2 to the Petition.)

By letter dated May 23, 2000, BCIS denied Huli's I–730 Petition. The letter explained the grounds for denial as follows:

> The evidence of the record indicates that your application for asylum in the United States was approved on May 27, 1997. The evidence of the record also indicates that you were married on July 30, 1998, after your application for asylum was approved. Since the relationship between you and the beneficiary did not exist when your application was approved, this petition may not be approved.

(Letter from Respondent to Huli, dated May 23, 2000, attached as Exhibit 7 to the Petition.)

On December 2, 2002, Huli, having retained counsel, submitted a Motion to Reopen and Reconsider the denial of her I–730 Petition. BCIS denied Huli's motion on the basis that the motion was untimely. (*See* Letter from Respondent to Huli, dated February 18, 2003, attached as Exhibit 10 to the Petition.) Huli now seeks a writ of mandamus setting aside the denial of her I–730 Petition and ordering Respondent to grant the Petition.

## II. *DISCUSSION*

██ Prior to addressing any of the pleadings, the Court must determine whether it has subject matter jurisdiction over the claims raised by Huli. *See Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Lunney v. United States*, 319 F.3d 550, 554 (2d Cir.2003) (citing *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The Court finds that Huli has not met that burden in this case.

The Petition states that the proceeding is brought pursuant to the Mandamus Act, 28 U.S.C. § 1361 ("Section 1361"). (*See* Petition at 1). In a later submission, Huli asserts that the INA § 279 ("Section 279"), codified at 8 U.S.C. § 1329, and 28 U.S.C. § 1331 ("Section 1331") also provide bases for jurisdiction. (Pet.'s Brief at 6–7.) None of the cited statutes provide subject matter jurisdiction in this proceeding.

## A. *JURISDICTION PURSUANT TO SECTION 279*

██ Huli's argument that Section 279 provides a basis for subject matter jurisdiction in this proceeding fails because the statute states that "nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers." 8 U.S.C. § 1329. Furthermore, the Supreme Court has explained that the provision does not confer jurisdiction over lawsuits against immigration officials. *See Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 477 n. 4, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); *see also Sadowski v. INS*, 107 F.Supp.2d 451, 453 (S.D.N.Y.2000).

## B. *JURISDICTION PURSUANT TO SECTION 1361*

██ Huli's jurisdictional claim grounded on Section 1361 also fails. Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." 28 U.S.C. § 1361. That provision offers a remedy only where the government official or agency owes the petitioner a "clear nondis-

cretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *see also Sadowski,* 107 F.Supp.2d at 453; *Rahman v. McElroy,* 884 F.Supp. 782, 787 (S.D.N.Y.1995). Therefore, "matters solely within the discretion of the INS" are "not reviewable" under Section 1361. *Wan Shih Hsieh v. Kiley,* 569 F.2d 1179, 1182 (2d Cir.1978); *see also Zheng v. McElroy,* No. 98 Civ. 1772, 1998 WL 702318, at *3 (S.D.N.Y. Oct. 7, 1998); *Ortiz v. INS,* No. 99 Civ. 0705, 2000 WL 728145, at *1 (S.D.N.Y. Jan. 18, 2000).

The decision to grant derivative asylum status is entirely discretionary. *See* 8 U.S.C. § 1158(b)(3)(A); *Miljkovic v. Ashcroft,* 366 F.3d 580, 582 (7th Cir.2004). The statutory basis for asylum, Section 208(b)(1)(A) of the INA, provides that "the Secretary of Homeland Security or the Attorney General *may* grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General." 8 U.S.C.A. § 1158(b)(1)(A) (West 2005) (emphasis added). Pursuant to this provision, the Attorney General is not required to grant asylum even to applicants who meet the eligibility standards prescribed by the government. Clearly, therefore, the Attorney General can be under no mandate to approve the applications of petitioners who do not satisfy the established requirements and procedures. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 443, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ("[A]n alien who satisfies the applicable standard under [INA] § 208(a) does not have a *right* to remain in the United States; he or she is simply *eligible* for asylum, if the Attorney General, in his discretion, chooses to grant it." (emphasis in original)); *see also Zhang v. INS,* 386 F.3d 66, 71 (2d Cir.2004). The statutory language pertaining to derivative asylum

contains similar terms: "A spouse . . . of an alien who is granted asylum under this subsection *may* . . . be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158(b)(3)(A) (emphasis added). Because mandamus does not lie to direct an agency to rule in a particular way on a decision within its discretion, Section 1361 does not provide jurisdiction in this proceeding. *Maldonado–Coronel v. McElroy,* 943 F.Supp. 376, 381 (S.D.N.Y.1996).

Huli contends that mandamus relief is also available to compel an official to act where that official has "ignored, abused, or violated statutory or regulatory standards in exercising their discretion." (Pet.'s Brief at 7.) Some courts have adopted the view that mandamus may be a vehicle for a court to review agency decision-making for abuse of discretion. *See, e.g., Work v. Rives,* 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925); *Carpet, Linoleum & Resilient Tile Layers v. Brown,* 656 F.2d 564, 566 (10th Cir.1981); *see also* 4 Kenneth C. Davis, *Administrative Law Treatise* §§ 23:12–:13 (2d ed.1983) (contrasting the "orthodox" majority view that mandamus relief is limited to compelling nondiscretionary actions with the "reformed" view that mandamus provides jurisdiction to review for abuse of discretion). Courts in this Circuit have primarily espoused the more limited "orthodox" view of mandamus relief endorsed by the Second Circuit. *See, e.g., Wan Shih,* 569 F.2d at 1182; *see also Zheng,* 1998 WL 702318, at *3; *Sadowski,* 107 F.Supp.2d at 453; *Rahman,* 884 F.Supp. at 787.

Even under the minority view, however, the Court lacks subject matter jurisdiction in this proceeding. According to that approach, the central issue is whether the action complained of "fall[s] within the scope of the discretion which Congress accorded the administrators." *Carpet,* 656

F.2d at 566. If the court finds that "defendants have been accorded sufficient discretion to act as they have, the courts may not direct them to act otherwise, and dismissal for lack of subject matter jurisdiction is appropriate." *Id.* at 568. Applying this analysis, the denial of Huli's I–730 Petition on the specified grounds falls squarely within the scope of discretion Congress accorded because the statute grants "sole discretion" to Respondent to determine "what evidence is credible and the weight to be given to that evidence" in determinations regarding asylum and derivative asylum. 8 C.F.R. § 204.1(f)(1). Furthermore, Respondent has discretion to deny derivative asylum status even to eligible applicants. *Cardoza–Fonseca,* 480 U.S. at 443, 107 S.Ct. 1207; *Zhang,* 386 F.3d at 71. Accordingly, Section 1361 does not provide jurisdiction in this proceeding.

## C. *JURISDICTION PURSUANT TO SECTION 1331*

 Huli also alleges jurisdiction under Section 1331. Section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under a federal statute "where the complaint includes allegations either that [federal law] creates the cause of action or that [federal law] is a necessary element of the claim or that some right or interest will be defeated or sustained by a particular construction of [federal law]." *Franchi v. Manbeck,* 947 F.2d 631, 633 (2d Cir.1991); *see also Kim,* 340 F.Supp.2d at 388. Section 1331, standing alone, does not confer subject matter jurisdiction. The jurisdiction extends only to claims that arise from some other applicable federal constitutional or statutory provision. *See Karan v. McElroy,* No. 02 Civ. 6678, 2003 WL 21209769,

at *2 (S.D.N.Y. May 23, 2003). Because Huli's Petition does not cite any federal statute that provides a cause of action or otherwise creates a federally-protected right or interest that would afford an applicable remedy in this case, Section 1331 by itself does not grant the Court subject matter jurisdiction.

Although Huli alleges a violation of the INA, that statute does not itself create a cause of action or federally-protected right or interest in derivative asylum status, just as it does not confer an alien a right to remain in the United States. *See Cardoza–Fonseca,* 480 U.S. at 443, 107 S.Ct. 1207. Analogously, the statute simply provides that aliens may be granted derivative asylum "if the Attorney General, in his discretion, chooses to grant it." *Id.; see also Azizi v. Thornburgh,* 908 F.2d 1130, 1134 (2d Cir.1990) (holding that alien and alien spouse do not have a constitutionally-protected property right to an immigrant visa). Accordingly, the Court finds that Section 1331 does not provide subject matter jurisdiction.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated September 30, 2005 is amended to incorporate the discussion above; and it is further

**ORDERED** that the petition of petitioner Rozeta Goxhabelli Huli for a writ of mandamus is DENIED, and the cross-motion (Docket No. 13) of respondent Terry E. Way to dismiss the petition herein is GRANTED.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**