**Enrique CASTILLO, Eridania Del Carmen Paez, Andres Gomez and Danny Pichardo, Petitioners,**

**v.**

**Condoleeza RICE, Secretary of State of the United States; Maura Harty, Assistant Secretary, Bureau of Consular Affairs; June Kunzman, Managing Director, Visa Office, U.S. Department of State; Jeffrey Gorsky, Chief of Legislation and Regulatory Assistance, U.S. Department of State; John Brennan, Director of Field Support and Liaison, U.S. Department of State; Hans Hertell, U.S. Ambassador, Dominican Republic; Mike R. Schimmel, Consul General and Chief of Visa Operation, U.S. Consulate; William Bent, Chief, Immigrant Visa Unit, U.S. Consulate, Santo Domingo, Do-**

minican Republic; Michael Chertoff, Secretary, Department of Homeland Security; Emilio Gonzalez, Director, U.S. CIS; and Donald Neufeld, Chief, Field Operations, Domestic Operations, U.S. CIS, Respondents.

No. 07 Civ. 2628(DAB).

United States District Court,
S.D. New York.

July 28, 2008.

■■■■■■■■■■

Dawn Pipek Guidone, Esq., Mineola, NY, for Petitioners.

F. James Loprest, Jr., Sp. Asst. U.S. Attorney, S.D.N.Y., New York, NY, for Respondents.

## MEMORANDUM & ORDER

DEBORAH A. BATTS, District Judge.

Petitioners Enrique Castillo and Eridania del Carmen Paez filed a Petition for Writ of Mandamus (the "Petition") on March 30, 2007 seeking to compel the United States Consulate located in Santo Domingo, Dominican Republic to schedule immediately an interview to allow them to present evidence in support of Ms. Paez' application for a K–3 visa. Ms. Paez, a citizen of the Dominican Republic, had married Mr. Castillo, a United States citizen, in the Dominican Republic on July 18, 2006. Shortly after the wedding, Mr. Castillo filed an immigrant visa petition (Form I–130) with the United States Citizenship and Immigration Service ("USCIS") as well as an application for a K–3 non-immigrant visa (Form I–129) on behalf of his wife. The K–3 visa, which was created by Congress in 2000, would allow Ms. Paez to come to the United States to be with her husband pending the processing of her immigrant visa petition. Before a K–3 visa can be issued to Ms. Paez, however, she is required to present proof of her eligibility at an interview at the United States Consulate in Santo Domingo, Dominican Republic (the "Consulate"). The Consulate placed Ms. Paez on a waiting list for an interview; the list consisted of more than 27,500 cases as of February 28, 2007. Petitioners contend that, in creating the K–3 visa, Congress intended that applicants such as Ms. Paez should be granted expedited interviews by United States consulates in order to determine their eligibility for the visa.[1]

Now before the Court is Defendants' Motion to Dismiss the Petition and the Amended Petition on the grounds that subject matter jurisdiction is lacking with respect to both petitions, that the Amended Petition fails to state a claim for which relief may be granted and that, with respect to newly-added petitioners Mr. Gomez and Mr. Pichardo, venue is improper. While Petitioners oppose the Motion to Dismiss, they concede that both the original Petition and the Amended Petition fail, on their face, to invoke the Court's subject matter jurisdiction. Petitioners contend, however, that they should be granted leave to file a Second Amended Petition in which they will assert an adequate basis for subject matter jurisdiction.

For the reasons stated below, Respondents' Motion to Dismiss the Petition and the Amended Petition for lack of subject matter jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(1), is GRANTED. Additionally, because Petitioners fail to demonstrate an adequate basis for the Court to exercise subject matter jurisdiction over their claims, Petitioners' request for leave to file a Second Amended Petition is DENIED.

---

1. Following a conference with the Parties, the Court granted Petitioners leave to file an Amended Petition by March 31, 2008. The Court received a copy of Petitioners' Amended Petition which added two additional petitioners: Andres Gomez and Denny Pichardo. The Amended Petition, dated November 8, 2007, seeks essentially the same relief as the original Petition. The Amended Petition does not, however, appear on the Docket in this matter; Petitioners may have failed to file it properly with the Clerk of Court. Nevertheless the Court deems the Amended Petition to have been filed in a timely fashion.

## LEGAL STANDARD

Rule 12(b) (1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed. R.Civ.P. 12(b)(1). Under Rule 12(b)(1) even "a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." *Frisone v. Pepsico Inc.*, 369 F.Supp.2d 464, 469 (S.D.N.Y. 2005) (citations omitted).

When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986)); *see also Frisone*, 369 F.Supp.2d at 469–70 ("no presumptive truthfulness attaches to the complaint's jurisdictional allegations"). The court must nevertheless construe all ambiguities and draw all inferences in a plaintiff's favor. *Id.* Ultimately, however, the plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir.2002)).

Both the Petition and the Amended Petition state that the Court's subject matter jurisdiction over this action is grounded in the All Writs Act, 28 U.S.C. § 1651, and Rule 21(c) of the Federal Rules of Appellate Procedure. (Petition ¶ 2; Am. Petition ¶ 2.)

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court has held that the "All Writs Act authorizes writs 'in aid of [the courts'] respective jurisdictions' without providing any federal subject-matter jurisdiction in its own right ...." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 31, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534–535, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999)). The Second Circuit Court of Appeals has thus held that the All Writs Act:

> while not conferring an independent basis of jurisdiction, provides a tool courts need in cases over which jurisdiction is conferred by some other source, and in such cases the Writs Act authorize[s] a federal court to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.

*Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 413 (2d Cir.2002) (quoting *United States v. Tablie*, 166 F.3d 505, 506–07 (2d Cir.1999)).

## DISCUSSION

■ Rule 21(c) of the Federal Rules of Appellate Procedure provides no basis for jurisdiction over this matter.[2] It is also

---

**2.** Rule 21(c) of the Federal Rules of Appellate Procedure. relating to "Writs of Mandamus and Prohibition and Other Extraordinary Writs," provides in pertinent part that:

An application for an extraordinary writ other than [a writ of mandamus or prohibition to a court under Rule 21(a)] must be made by filing a petition with the circuit clerk with proof of service on the respondents.

Fed. R.App. P. 21(c). The rule does not speak to the Court's subject matter jurisdiction over Petitioners' claims. Moreover, the federal rules of procedure, whether they are applicable in the district courts or in the circuit courts, do not provide federal courts with jurisdiction over cases—it is statutes that confer jurisdiction. *See* Fed.R.Civ.P. 82 ("These rules do not extend or limit the jurisdiction of district courts or the venue of actions in those

clear that the Petition and Amended Petition fail to invoke the Court's subject matter jurisdiction under the All Writs Act alone. *See Hutchinson v. Mukasey*, No. 07 CV 10716(GBD), 2007 WL 4323006, at \*2 (S.D.N.Y. Dec.10, 2007) ("The Writs Act, alone, does not confer [subject matter] jurisdiction"). Petitioners moreover concede in their opposition to Respondents' Motion to Dismiss that neither the Petition nor the Amended Petition "expressly reflect the basis" for subject matter jurisdiction.[3] (Pets.' Mem. at 9.) Petitioners nevertheless request leave to file a Second Amended Petition in which they would allege that subject matter jurisdiction exists pursuant to (1) the mandamus statute, 28 U.S.C. § 1361, (2) the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 1701, *et seq.* and (3) the federal question statute, 28 U.S.C. § 1331. (*Id.*)

■ The mandamus statute provides that:

[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361. A writ of mandamus is an extraordinary measure that courts typically grant "sparingly, to redress a 'clear abuse of discretion.'" *See In re Repetitive*

*Stress Injury Litigation*, 11 F.3d 368, 373 (2d Cir.1993) (quoting *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987)). A court has mandamus jurisdiction only when a plaintiff has a clear right to the relief requested, there is a plainly defined and peremptory duty on the defendant's part to do the act in question, and no other adequate remedy is available. *See Heckler v. Ringer*, 466 U.S. 602, 616–617, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

■ Petitioners claim that a writ of mandamus is warranted in this case because Respondents have failed to schedule interviews for the spouses and fiancees named in the Petition and Amended Petition on an expedited basis, in contravention of sections 101(a)(15)(K) (i)-(iv) of the Immigration and Nationality Act (the "INA"). (Pets.' Mem. at 9.) With reference to the K–1 and K–3 visas for which Petitioners seek expedited interviews, the INA provides that K visas are available to:

subject to subsections (d) and (p) of section 1184 of this title, an alien who—

(i) is the fiancee or fiance of a citizen of the United States ... and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission;

---

courts"); *Aetna Cas. & Sur. Co. v. Spartan Mechanical Corp.*, 738 F.Supp. 664, 675 (E.D.N.Y.1990) (observing that the Federal Rules of Civil Procedure "provide for many things, liberality of joinder included, but the Rules only apply to disputes within the court's subject matter jurisdiction").

**3.** Petitioners' counsel argues that the Court has subject matter jurisdiction because "[t]he Courts have found that subject matter jurisdiction is not something that can be waived." (Pets.' Mem. at 8.) Petitioners' counsel fails to understand that what courts mean when they say that subject matter jurisdiction cannot be waived is that, in the *absence* of subject mat-

ter jurisdiction, a court cannot proceed even if some or all of the parties to the action wish the court to do so. *See, e.g., Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (" '[w]ithout jurisdiction the court cannot proceed at all in any cause' ") quoting *Ex parte McCardle*, 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868). In this case, there is no subject matter jurisdiction and Petitioners cannot waive the existence of jurisdiction; all the Court can do is to dismiss the case. *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

(ii) has concluded a valid marriage with a citizen of the United States ... who is the petitioner, is the beneficiary of a petition to accord a status under section 1151(b)(2)(A)(i) of this title that was filed under section 1154 of this title by the petitioner, and seeks to enter the United States to await the approval of such petition and the availability to the alien of an immigrant visa

\* \* \*

8 U.S.C. § 1101(a)(15)(K)(i)-(ii). The INA further provides that in the case of K–1 visas:

A visa shall not be issued under the provisions of section 1101(a)(15)(K)(i) of this title until the consular officer has received a petition filed in the United States by the fiancée or fiancé of the applying alien and approved by the Secretary of Homeland Security. The petition shall be in such form and contain such information as the Secretary of Homeland Security shall, by regulation, prescribe. Such information shall include information on any criminal convictions of the petitioner for any specified crime. It shall be approved only after satisfactory evidence is submitted by the petitioner to establish that the parties have previously met in person within 2 years before the date of filing the petition, have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival, except that the Secretary of Homeland Security in his discretion may waive the requirement that the parties have previously met in person. In the event the marriage with the petitioner does not occur within three months after the admission of the said alien and minor children, they shall be required to depart from the United States and upon failure

to do so shall be removed in accordance with sections 1229a and 1231 of this title.

8 U.S.C.A. § 1184(d). With respect to K–3 visas, the INA provides that:

A visa shall not be issued under the provisions of section 1101(a)(15)(K)(ii) of this title until the consular officer has received a petition filed in the United States by the spouse of the applying alien and approved by the Attorney General. The petition shall be in such form and contain such information as the Attorney General shall, by regulation, prescribe. Such information shall include information on any criminal convictions of the petitioner for any specified crime.

8 U.S.C.A. § 1184(r). None of these provisions provide the least bit of support to Petitioners' claim that, because the waiting list for a K–1 or K–3 visa interview at the Santo Domingo Consulate is over two years, the Consulate is therefore acting "extremely contrary to the clear intent of Congress." (Am. Petition ¶ 15.) These provisions of the INA are not ambiguous and they clearly do not prescribe any expedited scheduling of K–1 or K–3 visa interviews by United States consulates, regardless that the legislative history behind the creation of these visa categories suggests otherwise to Petitioners. *See, e.g., Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254–55, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (noting that the Supreme Court has taught "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete") (internal citations and quotation marks omitted); *Lee v. Bankers Trust Co.,* 166 F.3d 540, 544 (2d Cir.1999) ("It is axiomatic that the plain meaning of a statute controls its interpre-

tation ... and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous").

Petitioners simply do not have a right to an expedited interview date from the Consulate. *Cf. Rahman v. McElroy*, 884 F.Supp. 782, 786 (S.D.N.Y.1995) ("Simply put, plaintiffs do not have a constitutionally-protected interest in an immigrant visa—let alone in a particular interview adjustment interview date") (citing *Azizi v. Thornburgh*, 908 F.2d 1130, 1134 (2d Cir. 1990)).[4] Because Petitioners cannot demonstrate that they are clearly entitled to the relief that they seek, the Court finds that it lacks mandamus jurisdiction over this action under 28 U.S.C. § 1361. *See, e.g., Zheng v. Reno*, 166 F.Supp.2d 875, 881 (S.D.N.Y.2001) (holding that "[t]he INS's duty to schedule interviews regarding adjustment applications is part of the adjustment process, which is wholly discretionary" and thus that the INS' discretion regarding the scheduling of interviews is "not reviewable under the mandamus statute") (citations omitted); *Rahman*, 884 F.Supp. at 787 ("Defendants have a clear duty to interview the plaintiffs, but they do not have to schedule those interviews on any particular day or in any special sequence").

■ Petitioners' contention that the APA might provide subject matter jurisdiction over this action also fails. The APA itself provides that it does not apply where an "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In this case, it is apparent that the processing of K–1 and K–3 visas is dependent upon the findings of consular officers. In the case of K–1 visas, federal

regulations promulgated pursuant to the INA provide:

(a) Fiancé(e). An alien is classifiable as a nonimmigrant fiance(e) under INA 101(a)(15)(K)(i) if:

(1) The consular officer is satisfied that the alien is qualified under that provision and the consular officer has received a petition filed by a U.S. citizen to confer nonimmigrant status as a fiancé(e) on the alien, which has been approved by the DHS under INA 214(d), or a notification of such approval from that Service;

(2) The consular officer has received from the alien the alien's sworn statement of ability and intent to conclude a valid marriage with the petitioner within 90 days of arrival in the United States; and

(3) The alien has met all other qualifications in order to receive a nonimmigrant visa, including the requirements of paragraph (d) of this section.

22 C.F.R. § 41.81(a). The regulations concerning K–3 visas provide:

(b) Spouse. An alien is classifiable as a nonimmigrant spouse under INA 101(a)(15)(K)(ii) when all of the following requirements are met:

(1) The consular officer is satisfied that the alien is qualified under that provision and the consular officer has received a petition approved by the DHS pursuant to INA 214(p)(1), that was filed by the U.S. citizen spouse of the alien in the United States.

(2) If the alien's marriage to the U.S. citizen was contracted outside of the United States, the alien is applying in the country in which the marriage took place, or if there is no consular

---

4. The Court recognizes that this and the other cases cited below do not involve K1 or K3 visas. The Court finds, however, that these cases are sufficiently analogous to be dispositive of the issues involved in this case.

post in that country, then at a consular post designated by the Deputy Assistant Secretary of State for Visa Services to accept immigrant visa applications for nationals of that country.

(3) If the marriage was contracted in the United States, the alien is applying in a country as provided in part 42, § 42, 61 of this chapter.

(4) The alien otherwise has met all applicable requirements in order to receive a nonimmigrant visa, including the requirements of paragraph (d) of this section.

22 C.F.R. § 41.81(b). These regulations are in turn given further elaboration by the State Department's *Foreign Affairs Manual. See* United States Department of State, *Foreign Affairs Manual* § 41.81, Procedural Notes N1–N12, *reprinted in,* 7 Immigration Law Service 2d (2008). Neither the regulations nor the *Foreign Affairs Manual* state that consular officials are required to give applicants for K–1 and K–3 visas expedited interviews, ahead of other visa applicants who applied earlier.[5]

In *Wan Shih Hsieh v. Kiley,* the Second Circuit found that, because the action the petitioner sought to compel (an investigation into whether the petitioner's permanent resident status ought to be rescinded) was "solely within the INS' discretion," whether the INS ultimately takes such action is "not reviewable under the Administrative Procedure Act or 28 U.S.C. § 1361." *Wan Shih Hsieh v. Kiley,* 569 F.2d 1179, 1182 (2d Cir.1978). Moreover, the Second Circuit observed that "[i]t is settled that the judiciary will not interfere with the visa-issuing process." *Id.* at 1181. The Court noted that this so-called "consular non-reviewability" doctrine is grounded in Congress' plenary power in the regula-

tion of immigration and admission of aliens into the United States. *See Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972) (" 'The power of congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications' ") (quoting *Lem Moon Sing v. United States,* 158 U.S. 538, 547, 15 S.Ct. 967, 970, 39 L.Ed. 1082 (1895)).

■ While the consular non-reviewability doctrine has been applied in numerous cases within the Second Circuit, "the doctrine does not apply in cases brought by U.S. citizens raising constitutional, rather than statutory, claims." *American Academy of Religion v. Chertoff,* 463 F.Supp.2d 400, 417 (S.D.N.Y.2006). In *American Academy of Religion,* the district court found that the consular non-reviewability doctrine did not apply to an action to compel the Department of Homeland Security to adjudicate a prominent Swiss scholar's visa application because the plaintiffs had stated a First Amendment claim and because the action was not directed at any consulate or at any consular officials. *Id.*

■ Petitioners have not stated any constitutional claims and merely seek to compel the Consulate at Santo Domingo to give them an earlier interview date for the processing of their K–1 and K–3 visas. Accordingly, the Court finds that it would lack subject matter jurisdiction over this action even if Petitioners were to be granted leave to file a Second Amended Petition because the doctrine of consular non-re-

---

**5.** Petitioners allege that the Respondent William Bent, chief of the Immigrant Visa Unit at the Consulate, advised in an e-mail dated October 30, 2006 that "All cases are added to the [K–3] waiting list in the order they are received." (Am. Petition ¶ 10).

viewability precludes any review under the APA of the Consulate's discretionary practice of scheduling interviews for K–1 and K–3 visa applicants. In the absence of any viable substantive statutory or constitutional claims, 28 U.S.C § 1331 would not provide the Court subject matter jurisdiction either. *See Beneficial National Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (holding with respect to federal question subject matter jurisdiction that "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution").

The Court finds that granting Petitioners leave to file a Second Amended Petition claiming subject matter jurisdiction under either 28 U.S.C. § 1361, 28 U.S.C. § 1331 or the APA would be futile since none of those statutes would provide jurisdiction over this action. *See Latino Quimica–Amtex S.A. v. Akzo Nobel Chemicals B.V.,* No. 03 Civ. 10312, 2005 WL 2207017, at * 4 (S.D.N.Y. Sept. 8, 2005) ("[w]here a court would lack subject matter jurisdiction over the case as pleaded in the proposed amendment, the court may deny leave to amend on the ground of futility") (citing *Chan v. Reno,* 916 F.Supp. 1289, 1302 (S.D.N.Y.1996)). Accordingly, Petitioners' request for leave to file a Second Amended Petition is DENIED and Respondents' Motion to Dismiss this action for lack of subject matter jurisdiction is GRANTED.

## CONCLUSION

For the foregoing reasons, the Court finds that subject matter jurisdiction over the Petition and the Amended Petition is lacking. Additionally, the Court finds that granting Petitioners leave to file a proposed Second Amended Petition would be futile because the Court would lack jurisdiction over Petitioners' claims under 28 U.S.C. § 1361, 28 U.S.C. § 1331 and the

APA. Accordingly, Petitioners are DENIED leave to file a Second Amended Petition. Respondents' Motion to Dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) is hereby GRANTED. The Clerk of Court is directed to close the docket in this case.

SO ORDERED.